**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

**MICHELLE RAY,**

 **Plaintiff,**

v.

**FAMILY PRESERVATION SERVICES, INC.
10304 Spotsylvania Avenue, Suite 300
Fredericksburg, Virginia 22408**

**and**

**PATHWAYS BY MOLINA, INC.
d/b/a FAMILY PRESERVATION SERVICES
10304 Spotsylvania Avenue, Suite 300
Fredericksburg, Virginia 22408,**

**and**

**PATHWAYS HEALTH AND COMMUNITY
SUPPORT, LLC,
10304 Spotsylvania Avenue, Suite 300
Fredericksburg, Virginia 22408,**

 **Defendants.**

        **Case No.:  4:20cv177**

        **JURY TRIAL DEMANDED**

## <u>COMPLAINT</u>

 Plaintiff Michelle Ray, by counsel, states as follows for her Complaint against Family Preservation Services, Inc., Pathways by Molina, Inc., d/b/a Family Preservation Services and Pathways Health and Community Support, LLC, collectively and singularly "Defendants":

### I.  <u>INTRODUCTION</u>

 1.  This is an action filed on behalf of Michelle Ray arising from unlawful retaliation and discrimination committed against her by the Defendants.  The Defendants retaliated against Ray for engaging in protected activity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000 et seq. ("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C. §§1221, et

seq. and the False Claims Act, 31 U.S.C. § 3730(h).  They discriminated against Ray because of a disability caused by Multiple Sclerosis in violation of the ADA.

## II.      JURISDICTION AND VENUE

2.      This is an action brought pursuant to Title VII and the False Claims Act as clarified and amended under the Fraud Enforcement and Recovery Act of 2009 ("FERA") (Public Law 111-21) and the Patient Protection and Affordable Care Act ("PPACA") (Public Law 111-148).  This Court has jurisdiction in this case pursuant to 31 U.S.C. §§3732(a), 3232(b), 3730(a), 3730(b), and 3730(h) as well as 42 U.S.C. §2000e(5).  This Court also has jurisdiction pursuant to 28 U.S.C. §§1345 and 1331.

## III.     DEFENDANTS

3.      Family Preservation Services, Inc. provides accessible, outcome-based behavioral and mental health services primarily to children.  It maintains its principal place of business at 10304 Spotsylvania Avenue, Suite 300, Fredericksburg, Virginia 22408.  It conducts substantial business in the Commonwealth of Virginia and the Eastern District of Virginia.

4.      Pathways by Molina, Inc., d/b/a Family Preservation Services, Inc. provides accessible, outcome-based behavioral and mental health services primarily to children.  It maintains its principal place of business at 10304 Spotsylvania Avenue, Suite 300, Fredericksburg, Virginia 22408.  It conducts substantial business in the Commonwealth of Virginia and the Eastern District of Virginia.

5.      Pathways Health and Community Support, LLC provides accessible, outcome-based behavioral and mental health services primarily to children.  It maintains its principal place of business at 10304 Spotsylvania Avenue, Suite 300, Fredericksburg, Virginia 22408.  It conducts substantial business in the Commonwealth of Virginia and the Eastern District of Virginia.

2

6.      Ray filed a timely Charge of Discrimination against "Pathways by Molina, d/b/a Family Preservation Services" asserting the allegations herein.  The entity answered the Charge implicitly admitting that Ray was an employee of the entity.  It never challenged Ray's assertion in the Charge of Discrimination that she was employed by "Pathways by Molina, d/b/a Family Preservation Services".  Plaintiff has since learned that an entity known as "Family Preservation Services, Inc." was spun-off or de-merged from a Molina related entity.  Moreover, Ray is in possession of a W-2 indicating that her employer was Family Preservation Services, Inc.  Plaintiff obtained the entire EEOC file and finds no evidence affirming that the correct employer is any other than Pathways by Molina, d/b/a Family Preservation Services.  For these and other reasons, in an abundance of caution, three entities have been named as Defendants.  Plaintiff expects to pare this to one Defendant after further communications between the parties.

## IV.      PLAINTIFF

7.      Plaintiff Michelle Ray was employed by Defendants as a Peninsula Region Office Administrator from September 5, 2012, until April 23, 2018.  She was wrongfully terminated by Defendants on April 23, 2018, in retaliation for taking measures in opposition to fraud and discrimination in violation of the statutes set forth above.  Ray is a citizen and resident of the United States and the Commonwealth of Virginia.  She maintains her principal residence at 10 West Pinto Court, Hampton, Virginia 23666.  Ray suffers from Multiple Sclerosis and is significantly impaired in the major life activities of working, standing, ambulating, among other significant impairments.  She is disabled as that term is defined or contemplated under the American with Disabilities Act.

## V.   FACTS AND APPLICABLE LAW

**A.   BACKGROUND**

8.      The Defendants provide outcome-based behavioral and mental health services for youth in an out-patient/in-home setting.  Defendants are engaged in the business of providing behavioral therapy to children and young adults afflicted with Autism Syndrome and behavioral disabilities.

9.      Under Medicaid and Center for Medicare/Medicaid Services ("CMS") requirements, each child is to be individually evaluated and receive a service plan created, monitored, and evaluated by a team of mental health professionals.  Pursuant to these individual service plans ("ISP's"), each child and their caregivers are to receive direct, face-to-face, in-home therapy and counseling.

10.      Among the services provided by the Defendants is behavioral therapy which is defined as systematic interventions provided by licensed practitioners within their scope of practice as defined under the Virginia Health Professions regulatory board, and pursuant to the respective health profession's regulatory boards of the respective states and municipalities named herein, and are covered as remedial care under Medicaid pursuant to 42 CFR 440.130(d). Behavioral therapy as provided to children and young adults on the Autism spectrum is intensive, data dependent[1], and expensive.

11.      The population of clients addressed in this Complaint and to whom these services are provided are under 21 years of age.  Behavioral therapy includes, but is not limited to, applied behavior analysis, which is an intense, relatively expensive, data-dependent mode of treatment.

---

[1]  The data must be gathered through frequent visits to the child's home and intensive counseling sessions with the child and parents/guardians.

12.     The Defendants have engaged in clear and specific acts of fraud on a regular basis since, at least, 2010.  Prior to her termination, Plaintiff asserted to Defendants' management that the following acts of fraud were committed in violation of explicit and implied certifications made to Government Payors:

a)      Defendants failed to supervise behavioral therapy counselors as required by law;

b)      Defendants failed to institute individual service plans as required by law;

c)      Defendants failed to train in-home caregivers as required by law;

d)      Defendants provided services to children who were not qualified to receive them;

e)      Defendants used providers who rendered services without proper training and certification;

f)      Defendants failed to issue required discharge reports; and

g)      Defendants "rounded up" billing time for behavioral therapy services and received payments for professional time not actually expended.

13.     The Defendants committed the acts and omissions identified in paragraph 12, above, despite certifying to all Government Payors that behavioral therapy services were provided as required under applicable law and despite certifying that all behavioral therapy counselors were properly supervised, all individual service plans were instituted and maintained in accordance with applicable law, in-home caregivers (typically parents and legal guardians) were trained by behavioral therapy counselors, all children who received services were qualified to receive them, all behavioral therapy counselors were properly trained, all reports were

properly issued, and time was properly and honestly billed.  These certifications were material to the Government Payors' decisions to pay.

**B.     DEFENDANTS' FRAUDULENT CONDUCT**

14.     Defendants have engaged in clear and specific acts of fraud on a regular basis since, at least, 2010.  The Plaintiff asserted several distinct types of claims.

**1.     <u>Failure to Supervise Providers</u>**

15.     For long periods of time beginning not later than early 2014, and with some of these periods spanning more than one year, the Peninsula[2] region of Defendants operated without a Board-Certified Behavioral Analyst to supervise its Behavioral Technicians.  This is a clear violation of Medicaid and CMS standards.  Despite operating without a BCBA, the Peninsula Region of Defendants routinely billed and collected monies from Medicaid under code H2033.  Such billing was fraudulent because the services were performed without the supervision of a BCBA.

16.     Defendants' managers knew that the Peninsula Region was operating without a BCBA for long periods of time.

17.     It is critical to note that the Defendants' software system afforded clinicians the sole option of billing at the higher level of care, code H2033, when billing Medicaid for home visits.  This software has been in place since before 2014.  For long periods of time providers would enter their notes in the computer system and have as their sole billing option the higher level of care (Code H2033) which required the supervisory involvement of a BCBA.  As the Peninsula Region often had no BCBA, the numerous billing entries under code H2033 were fraudulent.  Defendants were routinely paid by the government for these fraudulent claims.  The

---

[2] It is sometimes referred to as the Hampton region within Defendants.

6

Defendants obtained the payments by falsely certifying to the Government Payors that behavioral therapy services had been rendered pursuant to Code H2033 under the supervision of a BCBA.  This false certification was material to the Government Payors' decisions to pay.  Had the Government Payors known that these services were rendered without the supervision of a BCBA they would not have paid for them.

2.    **Fraudulent Individual Service Plans**

18.    The ISP is a critically important document.  It is the document from which services are tailored to the child and ultimately provided.  For long periods of time, many children who have been provided services under codes H2033 and other lesser codes by Defendants have been provided these services without an ISP as is required.  Very often ISP's have not existed at all.  Another common problem is that ISP's would not be created by qualified personnel, would not be updated periodically, often for years; and would not be created in the manner required by applicable regulations.

19.    An ISP is effective for one year.  The parent/guardian must "sign off" and approve the ISP.  The parent/caregiver must be updated monthly as to progress achieved under the ISP.  For many children, parent/guardian approval, updates, and, indeed, involvement at all in the child's care, simply never happened.  There are examples of counselors being hired and going into the field and reporting back to administrators, after providing services for months or weeks, and inquiring not about where a particular child's ISP was, or posing questions about its content, but asking questions about *what* an ISP was.  In other words, new counselors were sent into the field without training, rendered services for significant periods of time, and would learn only later about the function of the ISP and what it was.

20.     One child, discussed *infra*, went without any ISP at all for more than 18 months. During this time, services were billed and paid by Government Payors under code H2033.  This occurred with several other children as well.  During the significant periods of time that the Peninsula Region operated without a BCBA many children receiving services in the region either did not have an ISP at all or did not have a functional, updated ISP.  In any event, for these periods, Plaintiff asserts that numerous children did not have an ISP that met CMS billing standards.  These lapses were not minor or technical, rather they were fundamental and profound in their adverse impact upon services rendered.

21.     The Defendants obtained payments from the Government Payors by falsely certifying that behavioral therapy services had been rendered pursuant to Code H2033 with ISP's having been created, updated, applied, and monitored in accordance with applicable regulations. These false certifications were material to the Government Payors' decisions to pay.  Had the Government Payors known that these services were rendered without valid ISP's they would not have paid for them.

### 3.     Failure to Train Caregivers

22.     Defendants routinely ignored the training of parents, guardians and in-home caregivers.  This is a mandatory and critical objective of behavioral therapy under codes H2033 and H0032 as well as other less intensive codes.  Many parents and caregivers choose to use behavioral therapy services as a respite from their obligations to the child and blatantly refuse to participate.  They will often tell the Defendants' providers "this is my time" and tend to other matters.

23.     The failure of family caregivers to participate in Defendants' therapy services is pervasive and has occurred over a long period of time.  This lapse is fundamental and profound

in its adverse impact upon services rendered and program objectives.  Instead of insisting on participation by parents or caregivers and/or refusing to provide services without participation, Defendants continued to bill and fraudulently collect payment from Government Payors under codes H2033 and H0032 as if these basic standards had been met when they had not.

24.     The Defendants obtained payments from Government Payors by falsely certifying that behavioral therapy services had been rendered pursuant to Codes H2033 and H0032 by providing training to parents, guardians and in-home caregivers of the children being treated. These false certifications were material to the Government Payors' decision to pay.  Had the Government Payors known that these services were rendered without proper training of parents, guardians and in-home caregivers, they would not have paid for them.

### 4.     Provision of Services to Children Not Qualified to Receive Them

25.     Defendants routinely provided services to children who had not received an appropriate diagnosis confirmed by a physician, physician's assistant, or a licensed nurse practitioner and billed Government Payors for same.  Defendants would provide services under code H2033 to children who had no prospect for improvement and did not and could not productively participate in therapy.

26.     Defendants marketed these services to children receiving in-school care.  The simultaneous provision of these services to children receiving in-home care was prohibited. Defendants attempted to circumvent this prohibition by offering these children the provision of services under a subordinate Code H2012 during the school year and then during the summer elevating the care to H2033.  Defendants' management knew that billing for services under H2012 for children who were receiving in-school services was fraudulent and unlawful, but routinely engaged in this conduct.

9

27.     The Defendants obtained payments for these services by falsely certifying to the Government Payors that behavioral therapy services had been rendered pursuant to Code H2033 to children who were qualified to receive these services.  These false certifications were material to the Government Payors' decisions to pay.  Had the Government Payors known that these services were rendered to children who were not qualified to receive them, they would not have paid for them.  These acts of fraud were not minor or technical, rather they were fundamental and profound in their adverse impact upon the services rendered, the ability to provide such services to deserving children and to the quality of the programs involved.

### 5.     Defendants Rendered Services Without Proper Training

28.     New behavioral technicians were required to be provided training as to the importance and function of the ISP at the inception of their employment.  This did not occur. New counselors were also required to receive at least two days of safety training and additional administrative and legal standards training for 40 hours.  Behavioral Technicians were routinely sent out to provide services under billing code H2033 without receiving this mandated training.

29.     Defendants billed Government Payors for services under code H2033 and received payment for same knowing that counselors were providing them without appropriate training.

30.     The Defendants obtained these payments by falsely certifying to the Government Payors that behavioral therapy services had been rendered pursuant to Code H2033 by Behavioral Technicians who had been fully trained in accordance with applicable regulations. These false certifications were material to the Government Payors' decisions to pay.  Had the Government Payors known that these services were rendered by Behavioral Technicians who had not been properly trained, they would not have paid for them.  These acts of fraud were not

minor or technical, rather they were fundamental and profound in their adverse impact upon the services rendered, the ability to provide such services to deserving children and to the quality of the programs involved.

### 6.   Lack of Discharge Reports

31.   There were numerous occasions, over long periods of time, when no discharge reports were provided at all or were provided without the involvement of a BCBA in the Peninsula Region.

32.   BCBA's were supposed to be intimately involved in the supervision of the child's care, development of the ISP, supervision of the quality of progress notes and all aspects of services provided under code H2033.  These standards were not met for long periods of time in the Peninsula Region between the beginning of 2014 and the present time.

33.   The Defendants billed Government Payors as if discharge reports had been completed in accordance with applicable regulations when they had not.  Defendants received payments from Government Payors when they were not entitled to them.

34.   The Defendants obtained these payments by falsely certifying to the Government Payors that behavioral therapy services had been rendered pursuant to Code H2033 and that discharge reports had been properly performed when they had not.  These false certifications were material to the Government Payors' decisions to pay.  Had the Government Payors known that these services were rendered without discharge reports having been completed, they would not have paid for them.  These acts of fraud were not minor or technical, rather they were fundamental and profound in their adverse impact upon the services rendered, the ability to provide such services to deserving children and to the quality of the programs involved.

7.      **"Rounding Up" Time for Behavioral Therapy Services**

35.     Under billing Code H2033 one service unit equals 15 minutes.  Providers are prohibited from rounding up for partial units of service.  While they may accumulate partial units throughout the week for allowable "span billing" they shall bill only whole units.

36.     It is commonplace for Defendants' counselors to round up their daily time reports. Not only is the practice common, Defendants' management directed behavioral technicians to do so.  These practices have resulted in fraudulent billing and collection of payments from the government under code H2033.

37.     The Defendants billed Government Payors as if time had been kept and its value had been calculated in accordance with applicable regulations when it had not.  Defendants received payments from Government Payors when they were not entitled to them.

38.     The Defendants obtained these payments by falsely certifying to the Government Payors that the value of behavioral therapy services had been calculated in accordance with applicable regulations and had been rendered pursuant to Code H2033 when they had not.  These false certifications were material to the Government Payors' decisions to pay.  Had the Government Payors known that these services were rendered and billed for in this manner, they would not have paid for them.  These acts of fraud were not minor or technical, rather they were fundamental and profound in their adverse impact upon the government.

**C.      DEFENDANTS RETALIATED AND DISCRIMINATED AGAINST PLAINTIFF**

39.     Ray suffers from Multiple Sclerosis.  She filed a Charge of Discrimination with the EEOC in March of 2018.  She filed the original Charge of Discrimination because the Defendants repeatedly and on several occasions failed to accommodate Ray's disability by

granting needed time off.  These accommodations were reasonable and indeed mandated under the ADA and other law.

40.     Prior to filing the original Charge of Discrimination, Ray pressed the issue of needed time off with the Defendants.  Her request for time off, mandated under both the ADA and the Family and Medical Leave Act, created tension and enmity between Ray and her supervisors.  Ray's immediate supervisors knew that she suffered from MS.  But they would demand to know HIPAA-protected details and specifics about her condition when these details had already been provided to corporate human resources.  Her supervisors began to subject her to undue and increased scrutiny in many aspects of employment – not just related to attendance – in violation of Title VII and the ADA.

41.     The Defendants' discrimination against Ray gave rise to her first Charge of Discrimination filed on March 12, 2018.

42.     Upon information and belief, the Defendants learned of the filing of Ray's first Charge of Discrimination on approximately April 15, 2018.  The Defendants terminated her employment on April 23, 2018.  The reasons given to Ray in support of Defendants' decision to discharge her were entirely pretextual and contrived.  The real reasons for Ray's wrongful termination were that her supervisors became enraged because of the filing of Ray's first Charge of Discrimination as well as being angered over Ray's complaints discussed at paragraphs 44 through 47, *infra*.

43.     A Notice of Right to Sue was issued to Ray on August 27, 2020.  This Notice of Right to Sue was issued in connection with her second Charge of Discrimination filed for both retaliation and disability discrimination on April 24, 2018.  This Complaint is timely filed within 90 days of the issuance of the EEOC's Notice of Right to Sue identified above.

44.     Michelle Ray also engaged in protected activity under 31 U.S.C. §3730(h) by opposing and attempting to correct the Defendants' wrongful conduct.

45.     Ray communicated to the Defendants' management that she considered the billing practices alleged herein to be unlawful, not in compliance with applicable standards and that the practices must be altered to bring them into compliance with law.

46.     By late 2017, Ray had complained on several occasions to Myra Smith, the Defendants' executive in charge of the Peninsula Region, and to others, about the acts and omissions complained of in this Complaint.  She did so in an effort to stop fraud, improper billing and improper receipt of payment being committed upon Medicaid and Government Payors and to prevent future acts of fraud.

47.     As the Peninsula Region's office administrator, Ray knew that she could be held responsible for the actions and omissions set forth in this Complaint.  The specter of civil or criminal liability attaching to her as a result of the Defendants' conduct was intolerable to her.

48.     Despite providing excellent services to Defendants throughout her tenure of employment, the Defendants wrongfully discharged Ray in retaliation for her engaging in the conduct described above which is protected under Title VII and the False Claims Act.

## COUNT I

### *Title VII:  Retaliation*

49.     Plaintiff incorporates herein by reference paragraphs 1 through 48 of this Complaint as though fully set forth herein.

50.     Ray engaged in protected activity under Title VII and the ADA and this caused the Defendants to retaliate against her by terminating her employment.

51.     Ray was wrongfully discharged, and otherwise discriminated against, and the Defendants' actions were the proximate and actual cause of significant economic and non-economic harm to Ray.  The types of harm Ray has sustained include loss of back pay, loss of front pay, loss of benefits and harm to business and employment reputation.  In addition, Ray has personally suffered emotional pain, inconvenience, mental anguish, humiliation, loss of reputation and loss of quality and enjoyment of life.

52.     As a direct, proximate and actual result of the Defendants' conduct, Plaintiff Michelle Ray has suffered significant damages.

## COUNT II

### *False Claims Act:  Retaliation*
### *31 U.S.C. §3730(h)*

53.     Plaintiff incorporates herein by reference paragraphs 1 through 48 of this Complaint as though fully set forth herein.

54.     Ray engaged in protected activity under 31 U.S.C. §3730(h) and this caused the Defendants to retaliate against her by terminating her employment.

55.     Ray was wrongfully discharged, and otherwise discriminated against, and the Defendants' actions were the proximate and actual cause of significant economic and non-economic harm to Ray.  The types of harm Ray has sustained include loss of back pay, loss of front pay, loss of benefits and harm to business and employment reputation.  In addition, Ray has personally suffered emotional pain, inconvenience, mental anguish, humiliation, loss of reputation and loss of quality and enjoyment of life.

56.     As a direct, proximate and actual result of the Defendants' conduct, Plaintiff Michelle Ray has suffered significant damages.

## COUNT III

### *Discrimination Under the ADA*

57.     Plaintiff incorporates herein by reference paragraphs 1 through 48 of this Complaint as though fully set forth herein.

58.     As a result of Defendants' violation of Ray's rights under the ADA and Title VII and their unlawful discharge of her, she has suffered significant pecuniary losses, including loss of past and future income, loss of seniority and benefits, and loss of pension.  In addition, she has suffered non-pecuniary damages including humiliation, significant inconvenience, emotional pain, mental anguish, suffering and loss of enjoyment and quality of life.

59.     The Defendants engaged in these unlawful practices willfully, with malice and/or reckless indifference to Ray's rights protected by Title VII and the ADA.

60.     As a direct, proximate and actual result of the Defendants' conduct, Plaintiff Michelle Ray has suffered significant damages.

**WHEREFORE,** Plaintiff Michelle Ray, for each Count set forth above, requests that this Court Order:

a)     Plaintiff be awarded all compensation sufficient to make her whole for Defendants' violations and conduct, including an award of lost revenue and/or back pay, and double damages as permitted pursuant to Count II;

b)     Plaintiff be awarded a sum sufficient to make her whole for all nonpecuniary damages she has suffered personally including emotional pain, inconvenience, mental anguish, humiliation, loss of reputation and loss of quality and enjoyment of life;

c)     Plaintiff be provided with compensation for all special damages and injunctive or equitable relief, as may be appropriate, to prevent further harm to herself and to prevent harm to others and the public caused by Defendants' retaliation against whistleblowers;

d)     Plaintiff be awarded punitive damages under her retaliation and discrimination claims in amounts sufficient to deter this conduct in the future;

e)     Plaintiff be awarded all costs of this action, including attorneys' fees, costs and expert witness expenses; and

f)     Plaintiff recover interest from the dates all sums are due and such other relief as the Court deems just and proper.

## VI.    <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a jury trial on all issues raised in this Complaint.

Respectfully submitted,

**MICHELLE RAY**


By:   <u>/s/ James H. Shoemaker, Jr.</u>
                Of Counsel

James H. Shoemaker, Jr., VSB No. 33148
Andrew J. Dean, VSB No. 88192
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602
(757) 223-4500
(757) 223-4518 (facsimile)
jshoemaker@pwhd.com
adean@pwhd.com